# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMEY McKEE,

        Plaintiff,

  v.

R. BURNS, *et al.*,

        Defendants.

No. 4:23-CV-00112

(Chief Judge Brann)

## MEMORANDUM OPINION

### AUGUST 16, 2024

Plaintiff Jamey McKee, a serial prisoner litigant, filed the instant *pro se* Section 1983[1] action in early 2023, alleging constitutionally deficient medical care at the State Correctional Institution, Rockview (SCI Rockview), in Bellefonte, Pennsylvania. Presently before the Court are Defendants' motions to dismiss McKee's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In their motions to dismiss, Defendants also assert the affirmative defense of failure to exhaust administrative remedies. The Court will grant in part Defendants' motions to dismiss. Additionally, after converting the motions to dismiss to motions for summary judgment, the Court will grant judgment in Defendants' favor for failure to exhaust administrative remedies.

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

# I.    BACKGROUND

McKee is currently incarcerated in SCI Somerset.[2]  His lawsuit concerns incidents that purportedly occurred on January 6, 2023, at SCI Rockview.[3]  His initial complaint alleged Eighth Amendment deliberate indifference to serious medical needs against a single defendant, Corrections Officer R. Burns.[4]  Burns moved to dismiss the complaint,[5] and McKee responded by filing an amended complaint.[6]

McKee's amended complaint—the operative pleading in this action—adds three more defendants and claims of excessive force.  The three new defendants are Psychology Support Staff Acklee, Corrections Officer Smith, and Lieutenant Rook.[7]

McKee recounts that on the afternoon of January 6, 2023, he experienced a mental health crisis and began having suicidal ideations.[8]  He alleges that he spoke to multiple prison officials about his suicidal ideations and even hung several "handmade signs" outside of his cell door that stated "I'm suicidal."[9]  McKee

---

[2]    *See* Doc. 31.
[3]    *See generally* Doc. 1.
[4]    *See id.* ¶¶ 37-39.
[5]    Doc. 16.
[6]    Doc. 23.
[7]    *Id.* ¶¶ 8-11.  In his amended complaint, McKee first identified this Lieutenant as "John Doe," (*see id.* ¶ 9), then later as "Lieutenant Rock," (*see* Doc. 34 (moving for leave to amend "John Doe" to "Lieutenant Rock")).  Counsel for Defendants has clarified that this Defendant's last name is "Rook," not "Rock."  The Court will utilize the correct spelling going forward.
[8]    Doc. 23 ¶ 26.
[9]    *Id.* ¶¶ 30-45.

maintains that Defendants ignored his requests for psychiatric intervention and that some of them responded by telling him to "kill himself."[10]  He further alleges that, after several hours of being denied mental health care, he "banged his head extremely hard off the cement wall in his cell" and knocked himself unconscious.[11]

McKee asserts medical indifference claims against all four Defendants and excessive force claims against Burns, Smith, and Rook.[12]  He seeks compensatory and punitive damages, as well as a declaration that his civil rights were violated.[13]

Defendants move to dismiss McKee's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[14]  McKee appears to have filed a combined brief in opposition to Defendants' motions to dismiss.[15]  No reply briefs have been filed and the time in which to do so has passed, so the motions to dismiss are ripe for disposition.

## II.   STANDARDS OF REVIEW

### A.   Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but

---

[10]   *Id.*
[11]   *Id.* ¶¶ 46-48.
[12]   *Id.* ¶¶ 52-53.
[13]   *Id.* ¶¶ 55-58.
[14]   Docs. 30, 43.
[15]   Doc. 48.

whether the claimant is entitled to offer evidence to support the claims."[16]  The

court must accept as true the factual allegations in the complaint and draw all

reasonable inferences from them in the light most favorable to the plaintiff.[17]  In

addition to the facts alleged on the face of the complaint, the court may also

consider "exhibits attached to the complaint, matters of public record, as well as

undisputedly authentic documents" attached to a defendant's motion to dismiss if

the plaintiff's claims are based upon these documents.[18]

    When the sufficiency of a complaint is challenged, the court must conduct a

three-step inquiry.[19]  At step one, the court must "tak[e] note of the elements [the]

plaintiff must plead to state a claim."[20]  Second, the court should distinguish well-

pleaded factual allegations—which must be taken as true—from mere legal

conclusions, which "are not entitled to the assumption of truth" and may be

disregarded.[21]  Finally, the court must review the presumed-truthful allegations

"and then determine whether they plausibly give rise to an entitlement to relief."[22]

---

[16]   *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

[17]   *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

[18]   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

[19]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

[20]   *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

[21]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).

[22]   *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[23]

Because McKee proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[24]  This is particularly true when the *pro se* litigant, like McKee, is incarcerated.[25]

### B.    Motion for Summary Judgment[26]

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[27]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are

---

[23]  *Iqbal*, 556 U.S. at 681.

[24]  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

[25]  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

[26]  The court provides its standard of review for summary judgment with respect to Defendants' claim of failure to exhaust administrative remedies.  The parties have been informed that the court will consider administrative exhaustion in its role as a factfinder.  *See* Doc. 38.  The parties have also been provided additional time to supplement the record with relevant evidence and other supporting materials.  *See id.*  Consideration of evidence outside the pleadings moves this portion of Defendants' motion from motion-to-dismiss territory into that of summary judgment.  *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  Accordingly, Defendants' motions to dismiss with respect to administrative exhaustion are converted to motions for summary judgment.  Defendants' pleading sufficiency challenges remain subject to the standard of review for a motion to dismiss under Rule 12(b)(6).

[27]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[28]  FED. R. CIV. P. 56(a).

'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[29] At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[30] The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[31] This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[32] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[33] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[34]

## III.   DISCUSSION

Defendants challenge McKee's claims on multiple fronts. They first contend that McKee's amended complaint fails to state an Eighth Amendment

---

[29]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[30]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[31]   *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

[32]   *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

[33]   *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[34]   *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

claim against any Defendant.  They also maintain that McKee failed to exhaust his administrative remedies prior to filing the instant Section 1983 lawsuit.  The Court will take Defendants' arguments in turn.

### A.    Eighth Amendment Excessive Force

In a Section 1983 claim for excessive force, the "pivotal inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[35]  The factors analyzed when making this inquiry include: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response."[36]  The Eighth Amendment, however, "does not protect an inmate against an objectively *de minimis* use of force."[37]

McKee's claims of excessive force against Burns, Smith, and Rook require little discussion.  His amended complaint does not allege that these Defendants used *any* force against him, much less force that was excessive.  Rather, McKee asserts that Defendants refused his requests for mental health treatment and

---

[35] *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002)).

[36] *Id.* (quoting *Smith*, 293 F.3d at 649).

[37] *Smith*, 293 F.3d at 649 (citation omitted).

verbally told him to "kill himself."[38]  Without the fundamental allegation of use of force by any Defendant, it follows that no excessive force claim can survive Rule 12(b)(6) scrutiny.

### B.    Eighth Amendment Medical Indifference

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[39]  To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[40]  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[41]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of

---

[38]  Doc. 23 ¶ 50.

[39]  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[40]  *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[41]  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

injury.[42]  Deliberate indifference to serious medical needs is an exacting standard,

requiring a showing of "unnecessary and wanton infliction of pain."[43]  Claims

sounding in mere medical negligence will not suffice.[44]

The gravamen of McKee's amended complaint is that on the afternoon of

January 6, 2023, he informed Defendants of his suicidal ideations and requested

psychiatric treatment, but his requests were deliberately ignored.  McKee's

allegations against Burns, Smith, and Rook suffice to state a claim for relief.  He

avers that when he told these Defendants about his serious mental health issues,

they did not contact any medical provider but instead responded by telling him that

he should kill himself.  McKee further alleges that Burns destroyed McKee's

handmade signs that were seeking psychiatric help.  And, following Defendants'

alleged refusals of his requests for mental health care, McKee avers that he

inflicted self-harm.

McKee's allegations against Psychology Support Staff Acklee, on the other

hand, fall short.  He alleges that around 3:00 p.m., Acklee came to his cell to

provide him with a crossword puzzle.[45]  McKee claims that he informed Acklee

---

[42]  *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

[43]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

[44]  *Rouse*, 182 F.3d at 197.

[45]  Doc. 23 ¶ 31.

about his suicidal ideations, and Acklee told McKee that she would make sure psychiatrist Durst was aware.[46]

Nothing about this interaction evinces deliberate indifference to serious medical needs. McKee asserts that Acklee did not stand by his cell door to await assistance, allegedly in violation of prison policy.[47] But failure to follow a prison policy or regulation, by itself, generally does not rise to the level of a constitutional violation.[48] The Eighth Amendment medical indifference claim against Acklee, therefore, will be dismissed for failure to state a claim for relief.

## C.    Administrative Exhaustion

McKee's amended complaint plausibly states an Eighth Amendment medical indifference claim against Burns, Smith, and Rook. The remaining question is whether McKee properly exhausted these Eighth Amendment claims through the prison's grievance system.

As explained earlier, the Court provided McKee with notice that it would consider exhaustion in its role as a factfinder pursuant to *Small v. Camden*

---

[46] *Id.* ¶ 32.

[47] *Id.* ¶ 33.

[48] *See Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *Williamson v. Garman*, No. 3:15-CV-1797, 2017 WL 2702539, at *6 (M.D. Pa. June 22, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension").

*County*,[49] and gave him additional time to respond to Defendants' affirmative

defense of failure to exhaust administrative remedies.  Upon review of the record,

the Court finds that McKee failed to exhaust available administrative remedies and

is thus barred from pursuing his remaining Eighth Amendment claims.

The Prison Litigation Reform Act of 1995 (PLRA)[50] requires prisoners to

exhaust available administrative remedies before suing prison officials for alleged

constitutional violations.[51]  Proper exhaustion is mandatory, even if the inmate is

seeking relief—like monetary damages—that cannot be granted by the

administrative system.[52]  The exhaustion process a prisoner must follow is

governed by the contours of the prison grievance system in effect where the inmate

is incarcerated.[53]

Pennsylvania's Department of Corrections (DOC) employs a three-step

grievance process that must be completed to properly exhaust administrative

remedies in most cases.[54]  If informal resolution attempts do not solve the problem,

the first step is to file a written grievance (using form DC-804, Part 1) with the

Facility Grievance Coordinator within 15 working days after "the event upon

---

[49]   723 F.3d 265 (3d Cir. 2013).

[50]   42 U.S.C. § 1997e *et seq.*

[51]   *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

[52]   *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[53]   *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.

[54]   *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").

which the claim is based."[55]  An adverse decision by the grievance coordinator

must be appealed to the Facility Manager within 15 working days of the initial-

review response or rejection.[56]  Finally, an adverse decision by the Facility

Manager must be appealed to "Final Review" with the Secretary's Office of

Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15

working days of the date of the Facility Manager's decision.[57]

      The DOC has specific requirements for grievances submitted by inmates.

Those requirements include, among other conditions, that the grievance "be legible

[and] understandable"; "include a statement of the facts relevant to the claim" as

well as "the date, approximate time, and location of the event(s) that gave rise to

the grievance"; that the prisoner "identify individuals directly involved in the

event(s)"; and that the grievance include "the specific relief sought," including

"compensation or other legal relief normally available from a court."[58]

      Defendants' exhaustion argument is straightforward.  They maintain, quite

simply, that McKee never raised any claim regarding the January 6 incidents to

DOC officials in a formal grievance, much less did McKee pursue such a claim

through all required levels of administrative review.  These assertions are firmly

supported by the declaration of Nicki Paul, Superintendent's Assistant at SCI

---

[55]  DC-ADM 804 § 1(A)(3)-(5), (8).
[56]  *Id.* § 2(A)(1).
[57]  *Id.* § 2(B)(1).
[58]  *Id.* § 1(A)(11).

Rockview,[59] as well as the comprehensive list of hundreds of grievances McKee did file while in DOC custody.[60]

McKee does not dispute Defendants' contention.  Instead, he argues that SCI Rockview staff made the grievance process unavailable to him such that no administrative exhaustion was possible or necessary.  The Court disagrees.

McKee spends a great deal of time rehashing various unrelated claims that underlie his numerous other civil lawsuits, as well as the alleged details surrounding his reporting and attempted grieving of these other claims.[61]  He concedes that, due to the excessive number of grievances he filed within a short amount of time—many of which SCI Rockview officials deemed frivolous—he was eventually placed on grievance restriction.[62]  Indeed, it appears that, within the first two months of McKee's incarceration at SCI Rockview, he filed no less than *thirty-one* grievances.[63]

The gist of this lengthy historical recitation seems to be that McKee believes administrative remedies were made unavailable to him via a series of retaliatory actions.  He cites *Rinaldi v. United States*[64] for the proposition that he was

---

[59]   *See* Doc. 37-1 at 2 ¶¶ 3-4.
[60]   *See* Doc. 37-1 at 4-22.
[61]   *See* Doc. 48 at 9-17.
[62]   *Id.* at 10; *see* Doc. 48-2 at 2 (noting that, on May 28, 2022, McKee was placed on a 90-day grievance restriction "for filing seven frivolous grievances within a 30[-]calendar[-]day period," during which he was limited to one grievance every 15 working days); *see also* DC-ADM 804 § 3(A) ("Grievance Restriction").
[63]   *See* Doc. 37-1 at 21-22.
[64]   904 F.3d 257 (3d Cir. 2018).

inhibited from resorting to administrative remedies through "serious threats of retaliation and bodily harm."[65]  To successfully make such a claim, the prisoner-plaintiff has the burden to show that (1) "the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance"; and (2) "the threat actually did deter this particular inmate."[66]

While McKee's history of alleged retaliation by SCI Rockview officials satisfies the initial objective inquiry, he has not established the second, subjective element that he was actually deterred by the alleged conduct.  McKee's own documents and declaration demonstrate that, as soon as he was able to procure grievance forms, he immediately filed additional grievances at SCI Rockview.[67] Moreover, McKee avers that the primary reason he did not file more grievances was because he was improperly denied grievance and grievance appeal forms by SCI Rockview staff, not because he feared retaliation.[68]

Assuming that the grievance process was made unavailable while McKee was housed at SCI Rockview due to either threat of retaliation or withholding of grievance forms, McKee has still failed to show that, once the impediment to filing a grievance was removed, he sought an extension of time under DC-ADM 804 § 1(C)(2) to file a grievance.  McKee was transferred to SCI Frackville on February

---

[65]   Doc. 48 at 27-28 (citing *Rinaldi*, 904 F.3d at 267).
[66]   *Rinaldi*, 904 F.3d at 269.
[67]   *See* Doc. 48 at 11; Doc. 48-1 at 3, Doc. 48-3, Doc. 48-4.
[68]   *See* Doc. 48-1 at 3.

2, 2023, only a few weeks after the January 6 incident.[69]  Under DC-ADM 804 §
1(A)(5) and (8), he had 15 working days, or until January 27, 2023, to submit his
grievance.  However, Section 1(C)(2) provides for a "reasonable extension" in the
event that circumstances delay an inmate's ability to timely file a grievance.
McKee thus had an obligation to seek an extension under Section 1(C)(2) to file
his grievance once he was transferred to SCI Frackville and the impediment to
filing was removed.[70]  He did not do so.

McKee's case is analogous to the inmate-plaintiff's circumstances in *Talley
v. Clark*.  There, plaintiff Quintez Talley averred that he had no access to grievance
forms or writing implements while housed in a psychiatric observation cell for
approximately a month following the at-issue incidents.[71]  After regaining access to
grievance materials, Talley did not seek an extension of time to file a grievance but
instead filed a Section 1983 lawsuit in federal court.[72]  Talley claimed that, since
he had no access to grievance forms or writing implements for an extended time
while in the psychiatric observation cell, he had no obligation to exhaust
administrative remedies under DC-ADM 804.[73]

---

[69]  *See* Doc. 9.
[70]  *See Talley v. Clark*, __ F.4th __, 2024 WL 3611794, at *3-4 (3d Cir. Aug. 1, 2024).
[71]  *Id.*, at *1.
[72]  *Id.*
[73]  *Id.*, at *3.

The Third Circuit disagreed.[74]  The panel noted that DC-ADM § 1(C)(2) expressly provided for grievance extensions and reasoned that requiring prisoners to seek an extension to file a grievance under this provision "serves the important goals of exhaustion."[75]  The court of appeals thus held, "Because a request to extend or be excused from the 15-day deadline for filing a grievance is explicitly included as part of the Pennsylvania DOC's grievance procedures, a prisoner *must* request permission to file an untimely grievance under § 1.C.2 just as he must pursue the grievance itself.  To hold otherwise would render § 1.C.2 of no value in derogation of the PLRA's exhaustion requirement."[76]

This holding applies directly to the facts of the case at bar.  Once McKee was transferred to SCI Frackville and the alleged impediments to filing grievances were removed, McKee was obligated to seek permission to file an untimely grievance under DC-ADM § 1(C)(2).[77]  Like Talley, however, McKee skipped this step and instead filed a Section 1983 lawsuit in federal court.  This misstep is fatal to McKee's Eighth Amendment claims.

McKee's ability to file grievances after his transfer to SCI Frackville is clearly established in his DOC grievance history.  That history reflects that, almost immediately upon entering SCI Frackville, McKee once again began filing

---

[74]  *Id.*, at *3-4.
[75]  *Id.*, at *4.
[76]  *Id.* (emphasis added).
[77]  *See id.*, at *3-4.

numerous grievances.[78]  Even more damaging for McKee is that he filed grievances that concern not only events at SCI Frackville, but also events that occurred while he was previously incarcerated at SCI Rockview, indicating that he was aware that those past issues could and should be administratively challenged.[79]

Under *Talley v. Clark*, McKee had an affirmative obligation to seek permission to file an untimely grievance once the impediments to filing were removed.  McKee did not do so, and instead immediately filed a Section 1983 lawsuit in federal court, in violation of the PLRA's exhaustion mandate.  His Eighth Amendment medical indifference claims, therefore, are procedurally defaulted and barred.[80]  As a consequence, summary judgment must be granted in Defendants' favor on these claims.

### D.    Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[81]  Further leave to amend will be denied as futile. It is clear that McKee did not exhaust administrative remedies against any Defendant for the Section 1983 claims alleged in this case and he thus procedurally

---

[78]  *See* Doc. 37-1 at 4.

[79]  *See id.*

[80]  The Court observes that McKee's Eighth Amendment excessive force claims and his medical indifference claim against Acklee—if they had plausibly alleged a claim for relief—would likewise be barred as procedurally defaulted.

[81]  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

defaulted those claims.  No amendment could cure this deficiency, so further leave to amend will be denied.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant in part Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The Court will also grant judgment in Defendants' favor on the remaining Eighth Amendment medical indifference claims based on McKee's failure to exhaust administrative remedies. An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge